Your honors, I'm here representing Mr. Waldeck. There are essentially, there's two issues on the appeal. The first issue is the issue of whether or not the district court erred in denying a motion to suppress. That has two components to it. The first is whether or not the officers had reasonable suspicion to stop him on a Montana violation for not driving in the right-hand lane. And in violation of Montana Code 618321C with subparts. So the officer stopped Waldeck on a traffic violation for what he indicated was driving in the right-hand lane. And he indicated to Mr. Waldeck that the reason he stopped him was because he couldn't drive in the right-hand lane unless he's passing. And the Montana Code 618321C has three exceptions and lists a variety of exceptions. Right, one of which is if you're getting ready to turn left. Yes, if you're preparing to turn left. It has no distance requirement on it whatsoever. He had a pretty long preparation. How many left turns did he pass before he finally... Well, he's from Oregon, Washington. Maybe not as familiar, so he's passing the streets to see what the name of the streets are. But didn't he go, apparently... So, I mean, it's reasonable to do that, especially if you're from out of state. Counsel, didn't he, he went some three miles, did he not? And according to the record extract, apparently he not only went three miles, but he passed five intersections, five different opportunities. Isn't that part of the record where he could have turned left? Yes, that is part of the record. That's what the officer testified to. That's what Judge Beloy referred to in page 20. So how far, if you go 30 miles and you passed 18, does that give reasonable suspicion? But if you go three miles and you only pass five, that it's not reasonable suspicion? Well, you know, this is a state highway. Assuming that it's right outside the town of Polson, there's going to be more left turns to the close yard of Polson than there would be, let's say, if you're going a long distance. So it is reasonable to anticipate having turning left to stay in the left-hand lane. So, and there's nothing in the Montana Code that says there's a distance requirement, which is different from the issue that was in the Texas case, the Fifth Circuit case, that had a distance requirement. But the whole issue in that case was whether it was a left turn or a left lane change, and that's the case that I cited in my brief. How about the tip from Rodriguez, though? I mean, they've got two reasons to support it. Two, yes. The other one is the tip from Rodriguez. There is a tip from Rodriguez. So how is that not sufficient to justify the stop? Well, first of all, we know she's a known liar because she lied to him at least on two occasions on two significant facts. Number one is she indicated that a person named David didn't give David's last name, whereas in Roland, the informant gave the first and last name, so they knew the identity. So that's one flaw. She, after the stop, she texted them and said that this person, David, who drives a red Charger, isn't going to be in Polson until the next day, which is a lie. What about the corroboration? And also said that this person wasn't going to be at the casino. He was going to be at some other hotel, which those two instances didn't pan out. There's nothing that she gave. Can you address the corroboration? She said he had history or priors. The officers verified that name match. Yes. The priors go back to 2016. This is October 2022. So there is a significant gap in time and activity in relation to the priors. The only thing she corroborated that was corroborated was that there was a person named David that drove a red Charger. She gave no basis of knowledge as to why he would have a significant amount of drugs at that time and that place, and there was nothing that corroborated he did. And he was driving a red Charger? Yeah. And he had Washington plates? And he was either from Washington or Oregon. She didn't know which, but it had Washington. And he observed her talking to him, right? No, with no exchange, with no indication of exchange. But I'm saying they observed him talking to her. So it proves that there was a person named David driving a red Charger who knows Rodriguez. Under state plates, Washington or Oregon, and that's not enough for a reasonable suspicion to justify a stop? Well, unlike Rowland, Rowland, where they found the informant, had no motive whatsoever to give false information. She had a motive. She didn't know she wasn't going to be arrested on that warrant. She had an outstanding warrant. She had a motive to deflect whatever was going on during that time onto somebody else. So she has a motive. So that's why in this case is far different than Rowland. And what they have corroborated, they haven't corroborated activity that's consistent with what she was saying, because what she was saying is David isn't going to be there until the next day, and he'll be staying at another motel. So all they corroborated was there's a guy named David whose red Charger was at the casino. Although, on the other hand, you've got to be a pretty dumb cop if you get this tip from her, you know she's in trouble, you know she's trying to get out of trouble, so she gives you a tip. And then all these things happen that don't quite match, but they match kind of close for you to say, oh, there's nothing here. Boy, if a cop says there's nothing here and he goes out for a cup of coffee, I'd say, I don't think you're doing your job. Well, they didn't get the phone number of Dave Big Dog and try to search to see what that phone number belonged to. Yeah. That's true. So this may amount to somewhat of a quick response with very little information based on what the police did. And because the case is so, when you really look at the detail of this case and the informant in this case who has no track record, who did lie, at least on a couple of significant information, and for them to conclude, okay, this David and this red Charger, who's supposed to be here tomorrow, and all they have is that they met with no information of any exchange of money or drugs. It's just, it's really, is there, does it give you a gut feeling? Yeah. But is it reasonable suspicion? I really think that's what it boils down to. I think Roland said totality of the circumstances, didn't it? But the totality of the circumstances, Your Honor, I suggest leans against reasonable suspicion. Because there isn't any one thing that corroborates that Mr. Waldeck at that point in time was involved in drug trafficking or had anything in his car. The informant did not give them the corroborative detail that was in the Alabama v. White case, where they could actually track the person who was actually identified, the person that was identified from a specific apartment into a specific car with a broken taillight, then go into the place where they said she was going to go to get drugs and go back to, go to the Mobley Hotel. And she was, or the person was right outside of the Mobley Hotel when they stopped. So there was a, there was a, not only a name given, specific car with a broken taillight, and the direction of travel and the travel pattern fit exactly with the informant. Here's a legal question to which I don't really know the answer. Is there a difference as to the level of suspicion that's required for a traffic stop, which this is, compared to a genuine arrest? Is there a difference? Yeah. Yeah, one's probable cause and the other one is reasonable suspicion. Reasonable, so there's less suspicion required for this, yeah. I think had they connected Dave Big Dog texts to Mr. Waldeck, they may have had it. But they didn't make an effort to connect that to those text messages. So we're not talking arrest, we're talking stop, traffic stop, yeah. But there has to be some corroboration. And they don't, to corroborate, he's the one, he's the David that they're talking about. I know you wanted to save a little bit of time. I am, and I'll just rest the second issue on the briefs. All right, thank you, counsel. Let's hear from the government. Good morning. Jennifer Clark on behalf of the United States from the District of Montana. I'll begin to address the informant, Ms. Rodriguez. And the officers had reasonable suspicion based on the totality of the circumstances from the information that she provided. This case parallels Rowland, and as the case of state, you take each one on a case-by-case basis. First of all, Ms. Rowland was known to the officers, she met with them, so she, like the informant in Rowland, would face consequences if she was not truthful with them. Her basis of knowledge was provided because she told them that she had met with him before, she had purchased drugs from him before. She showed them text messages that she said was with him, that they discussed her purchase of methamphetamine. She said that she told him to come over to Montana to distribute his drugs because he would make more money here. So she had a basis of knowledge to provide. She provided predictive information that they corroborated, which was a man named David. She told them that the car would be registered to him. When they found the car, they ran the registration, and it came back to David Waldeck. They Googled him. They found that he did have a lengthy history, which she told them that they would find. She told them that she was going to meet up with him later, and they did indeed see that. Now, while she was untruthful. A different kind of later, however. Correct. She was untruthful about that instance, but taking the totality of the circumstances and what they were able to corroborate and verify, the reasonable suspicion does exist in this case based on her information. And Alabama v. White says not every detail that is provided by the informant needs to be verified. She did not observe any specific drug exchange, though, correct? That's correct.  And, again, the totality of the circumstances, I believe, weighs in favor of reasonable suspicion given all of the information that she had provided. Mr. Hermel talked about the fact that she said he was from Oregon when, in fact, he was from Washington. The district court noted that he was from out of state. In the record, she said that she had just arrived from Oregon. And it could be that she had met with him before in Oregon, and that's why she made that assertion. The other details that they had corroborated was that he was an older male. He was at the casino. She said he was not going to be staying at that casino, but she did not say he was going to not be at that casino. And that casino is known for drug distribution, and that's located in the record at 119. The second reason that the officers had reasonable suspicion to stop Mr. Waldeck was based on the Montana Code 618321. And I would direct the court to subsection 3, which is the specific section that addresses roads such as the one Mr. Waldeck was on, the ones that have two lanes traveling in one direction. That statute starts with, you must drive in the right-hand lane unless you meet one of the exceptions. And there's many of those exceptions delineated. As the court was discussing, and at docket 32 is the video that the officers took, and you can see long left-hand turn lanes that he passed, and he did that for nearly three miles. Was he traveling in such a speed that it was plausible that he was looking? Meaning the argument here is he wanted to turn left, he wasn't quite sure where, and someone doing that is maybe going to go a little slowly as he checks out each place this way. What speed was he driving? We know he was driving below the speed limit. At one part it was 55 miles an hour was the speed limit, and one part was 70. The officers never did state at what speed he was traveling. However, you can see in the video that he's not slowing down at each intersection as if to look to see if he is going to turn and continues along in that left-hand lane. And he does so for quite a while. At the record at 70 through 71, the video starts late, and the officer said that he started that video after Caffrey Lane and estimated from Caffrey to Minesinger where he actually turned left was one mile. Just looking at the video, when it started, after a minute and 20 seconds, that silver car comes up behind him and is unable to pass, which is one of the reasons you need to be in the right-hand lane to let traffic pass in the left-hand lane. At 144, the sirens are activated, and at 212, you see the officers make the left-hand turn. If you estimate that that took about a mile, it would be about four minutes that he traveled in the left-hand lane before actually making a left-hand turn. Now, the officers had specific articulable facts that they identified that he was doing to violate this statute, and it's objectively reasonable for them to make this stop based on the fact that he traveled so far in that lane. Mr. Hermel points out that there's no time limit, but I would argue that it's reasonable for them to believe that he's violating this statute, and the touchstone of the Fourth Amendment is reasonableness. So based on those two reasons, the government believes that there was reasonable suspicion for the traffic stop. There is no distance limitation in this particular Montana statute, correct? That is correct, Your Honor. And if the court, would the court like me to address the expert testimony argument? The district court did not abuse its discretion when it admitted the testimony of Agent Shade as an expert. The expert testimony is admissible if it's relevant, probative, and not prejudicial, and you must look if it substantially outweighs the probative value. In this case, and this court had recently decided in January, the Velazquez case that stated that testimony similar to this on street value of drugs was relevant to show an element of the offense. In that case, it was an importation case, and that went to knowledge. Our argument to the district court in this matter was that it went to both knowledge and his intent to distribute. I don't read counsel's argument as really disputing the relevancy. It's more of four, three, overkill, you had so much evidence of distribution type of argument. Correct, and the other witnesses, the district court certainly looked at that and made some comments about it and ultimately decided that this was not cumulative evidence. In fact, he limited the testimony of Agent Shade to not cover what had already been brought into the record, which was the weight of the drugs and how it was packaged. Judge Malloy just limited it to drug prices, correct? That is correct. And the total figure was $290,000, is that right? Correct. And there had been no other testimony as to the street value of the drugs? There had not been. And so, based on the fact that expert testimony is relevant and that Rule 403 favors admission, we believe that the district court did not abuse its discretion and we would ask this court to affirm the district court's ruling on that matter and find that there was reasonable suspicion for the traffic stop. And if the court has no other questions, I will cede my time. Thank you. All right, thank you, counsel. Thank you. I think I had a little bit left. First of all, the statute at issue, I'll go to the first issue first. It starts out with the exceptions and then says you have to drive on the right hand. It says, except as provided in 3B and subject to subsection 4, upon all roadways having two or more lanes and traffic moving in the same direction, a vehicle must be driven. So it starts out, a person learning that statute is going to know to begin with that there are multiple exceptions. So I believe that the reasonableness of the mistake has not been met in this case. The other thing about the— Let me ask you, if I can, with respect to the notion of the distance limitation, and you contrasted this with, I think, the Texas statute, if I'm not mistaken. There it is. Well, there's no distance limitation, but I'm not sure if you would interpret it that way because if you require that there's a distance limitation, it really takes all the force out of the statute because someone can be in the left-hand lane and have an optional left turn five, six, eight, nine, ten miles up the road. I don't understand what your argument is that because there's no distance limitation that, therefore, it's ambiguous. I don't even think it's ambiguous. It just doesn't have a distance limitation. And when you look or review the testimony of the officers and look at the tape or the video there, there's just regular left-hand turns coming up every so often. So there's nothing in—it's clear there's nothing in the statute that indicates how long you have to prepare or how short you have to prepare. But the Texas statute was really clear. It had to be within 100 feet. So I don't think that that favors the reasonableness of the officer, especially when the officer says the only exception there is is if you're passing. It's not a reasonable interpretation of what the law really is. And then can I— You're over time, but why don't you go ahead and wrap up. Okay. So the other part of Rowan that's important is that the informant has to give predictive information, and that predictive information has to be corroborative of the crime that they are investigating. Nothing that the officers corroborated indicated whatsoever that David Waldek was the David and that David Waldek was engaged in criminal activity. And then the part of the prejudice that I was really focusing on is at page 420 of Excerpt Record 3, and that was when Agent Shade testified as to what guidelines they used to determine whether it goes federal, indicating that Mr. Waldek was a major drug dealer and not a low-level dealer. So that's—I'll submit it on that. Thank you. All right. Thank you very much, counsel, for both sides for your argument. The matter is submitted.
judges: FLETCHER, NGUYEN, Bennett